UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,         CASE NO.: 24-20286-CMA

    Plaintiff,

-vs-

JEFFREY DAVID KAMLET,

    Defendant.
_____/

## MOTION TO DISMISS INDICTMENT BASED ON PRE-INDICTMENT DELAY

The Defendant, JEFFREY KAMLET, by and through his undersigned counsel, and pursuant to Federal Rule 12(b)(3)(A)(ii) and the Fifth and Sixth Amendments of the United States Constitution, moves this Honorable Court to Dismiss the Indictment, due to prejudicial and unnecessary Pre-Indictment delay in bringing these charges. The following is offered in support.

I. **FACTUAL BACKGROUND**

At all relevant times, Defendant was "a registered doctor in the State of Florida, currently practicing … [and] also the co-owner of a pain medication/addiction rehabilitation clinic located in Miami Beach, Florida."[1] On April 27, 2022, Miami Beach Police Officers were called to Defendant's residence to investigate the status of two teenage drug addicts (J.S. and T.O) who allegedly had met Defendant earlier that evening and were present at his home, in a guest bedroom. Upon arrival, the Officers interviewed J.S. and T.O. and then transported them to the Police Station in handcuffs. A month later, the Miami Beach Police closed the investigation as "unfounded",

---

[1] Search Warrant Aff., at 6, Attached as Exhibit A.

because "no allegations of criminal activities were made by either party on scene," and "no crime ha[d] been committed".[2]

Subsequently, a state search warrant was sought and approved for Defendant's residence, based upon dramatically changed allegations from J.S. The search, conducted on March 9, 2023, yielded the drugs which Defendant is charged with possessing in this case. Defendant was arrested on that date, and Federal authorities were promptly notified, at the latest by March 22nd, 2023.[3] The United States Attorney's Office got involved - at latest - the following day, when the AUSA promised "his office will assist … in the investigation." (March 23rd, 2023).[4]

Although **state** charges were filed relating to **other** aspects of J.S.'s new allegations, all of the drugs were transferred to federal custody within a week of AUSA Gilfarb's above promise to assist in the investigation, *to wit*: on March 30, 2023.[5]

On that date at the latest, the DEA's "narcotics investigation" of Defendant had commenced. See, Report of Investigation, 3/30/23 ("**This ROI is in reference to the initiation of a narcotics investigation into KAMLET**, Jeffrey David **by the Drug Enforcement Administration (DEA)**, HIDTA Group 41.") (emphasis added).

---

[2] See MBPD Supplemental report **attached as Exhibit B.**

[3] "DEA Miami Field Division, HIDTA Group-41, met with Miami Beach Police Department (MBPD), Human Trafficking Detective Smith Orisme and Miami-Dade County, Human Trafficking State Attorney Office Investigator Francisco Casanovas."[3] During this meeting, HIDTA Group-41 was informed of the drugs seized and the fact that Defendant "is a medical doctor." See, ROI, 3/30/23, a**ttached as Exhibit C.**

[4] "TFO J. Dominguez, TFO N. D'Arpino, Detective S. Orisme, and Investigator F. Casanovas[4] met with Assistant United States Attorney (AUSA) Michael Gilfarb at the AUSA's Office, w[h]ere the case was presented to him. AUSA Gilfarb informed law enforcement that his office will assist in the furtherance of this investigation." ROI, 3/30/23 (see Exhibit C).

[5] "On March 30, 2023, Miami Beach PD TFO Jossue Dominguez signed out all the drug and some non-drug evidence from Miami Beach PD and transported the evidence to the HIDTA building located in Doral, FL. On the same date TFO Dominguez, TFO Nick D'Arpino, SA Bryan Zann, and TFO Daniel Hansman processed the items and declared them DEA exhibits 1 to 31 and non-drug exhibits N-1 to N-6." DEA Report of Investigation, File No. G1-23-0065; 3/31/23 (see **Exhibit C**).

The drugs remained in exclusive federal custody throughout the pendency of the state case, which was resolved approximately a year later, on March 23, 2024. In the 12 months from the time the federal agents received the drugs until the state case was resolved, no federal charges were filed, nor any investigation conducted. Then, three plus months **after** an agreed disposition was finalized on the state charges, the instant federal indictment was sought and secured. Upon information and belief, prior to finalizing an agreed plea, the State Attorney's Office, who claimed to be in regular contact with the US Attorney's Office, would have advised the U.S. Attorney's Office and the DEA of the proposed disposition, and would not have gone through with the plea if either had objected. Likewise, Defendant would not have agreed to the state disposition if he knew that he was just being set up for a federal indictment.

Upon further information and belief, other than routine testing of the substances by the DEA Lab, no additional investigation was conducted by federal authorities in the sixteen-month period between their receipt of the alleged controlled substances and the filing of federal charges[6]. Furthermore, at no time did Defendant flee the jurisdiction or fail to cooperate or make it difficult for the federal authorities to locate/contact him.[7]

Although there was no **technical** federal arrest on the drug charges (which would have started the speedy trial clock), those charges became an exclusive DEA led "investigation" within

---

[6] This is a significant factor weighing in Defendant's favor. See, *e.g.*, *United States v. Sanders*, No. 21-CR-20503-GAYLES/TORRES, 2023 U.S. Dist. LEXIS 231883, at *7-9 (S.D. Fla. Nov. 13, 2023) ("Whether delay is inordinate may depend on whether the crime being investigated is complex rather than simple.")

[7] This is also a significant factor weighing in Defendant's favor. See, *e.g.*, *United States v. Contreras*, 586 F. Supp. 3d 1272, 1285 (S.D. Fla. 2022) ("**Moreover, the Court has found that the delay is a result of the Government's lack of diligence in executing Defendant's arrest, as opposed to Defendant's evasion.**") (emphasis added)

3

two weeks of the search warrant's execution and Defendant's arrest, and the numerous constitutional speedy trial principles ought still to be weighed to some extent whereas here:

- DEA agents met and consulted with state law enforcement within two weeks of the arrest and seizure, and federal authorities immediately assumed the lead role in the investigation into the drug allegations against the Defendant;

- An Assistant United States Attorney was assigned to the case by at least March 23, 2023, advised that his office would "assist in the furtherance of this investigation", and engaged in regular communication with defense counsel and also with the state prosecutor.

- Federal authorities took and maintained exclusive possession of the drugs within weeks of their seizure; and

- Federal authorities performed the only analysis of the alleged drugs.

II. PROCEDURAL TIMELINE

**April 26, 2022**: Incident at Defendant's residence involving J.S.

**March 9, 2023:** State search warrant was obtained and executed at the Defendant's residence. Drugs seized pursuant to that warrant are the subject matter/evidence giving rise to this Indictment.[8] Defendant is arrested.

**March 23, 2023**: DEA opens drug investigation of Defendant and AUSA confirms that his office will "assist".

**March 29, 2023:** Defendant charged by Information in a State case with multiple counts, including delivery of controlled substances, based on the drugs seized.[9]

---

[8] A Motion to Suppress this evidence is being filed separately.

[9] See, *State of Florida v. Dr. Jeffrey Kamlet, Case No.: F23-004924 (Judge E. Venzer)*.

**March 31, 2023:** All alleged controlled substances were transferred to the custody of federal authorities (DEA) where they have remained until present.

**March 21, 2024:** State case resolved, after the undersigned were advised the U.S. Attorney's Office was not going forward with charges.

**March 25, 2024**: Defendant executes Voluntary Relinquishment of License

**July 3, 2024:** Federal Indictment returned against Defendant for Possession with Intent to Distribute Drugs, in violation of 21 USC 841, all seized on March 9th and 10th, 2023.

### III.   PRE-INDICTMENT DELAY

The Government unjustifiably waited 16 months - an excessive amount of time - before bringing these charges against the Defendant, affecting Mr. Kamlet's ability to defend against the charge, when they had all of the necessary evidence and did no further investigation at all after taking possession of the drugs.

Almost entirely, the pending charge relates to drugs and other substances the Defendant, a medical doctor specializing in addiction recovery, was holding on behalf of patients he had treated. Some of the drugs were prescribed by the Defendant during the course of their treatment and other substances were taken and being held at his residence, which, he used to treat patients.

### IV.   PREJUDICE FROM THE PRE-INDICTMENT DELAY

Since June 2024, counsel has been in the process of attempting to contact these patients including those whose names appear on some of the bottles seized to obtain and reconstruct their records for court presentation. This task has become increasingly difficult due to the unreasonable length of time that expired before charges were brought, and the Defendant no longer having access to his office, or the ability to contact these patients. If the government had not waited sixteen months before filing the charges, the Defendant would have been able to demonstrate the valid

5

medical purpose for these prescriptions. Moreover, most of the pills prescribed **are still in the bottles - years after the prescription date on the bottle(s)** - which is completely contrary to the Government's accusation that Kamlet was possessing these drugs **with intent to distribute them.**

### A. Actual Prejudice

The Defendant has suffered actual prejudice as a result of the sixteen-month unnecessary delay in bringing these charges, including

- One of the patients who could have exonerated Defendant has since died.

- A few of Defendant's patients being treated for drug addiction are less able to recover documents and/or to remember with any degree of specificity, necessary information, that would exonerate Defendant;

- Some patients that have been treated for their drug addiction do not want to be involved in a public prosecution, having gone on with their lives;

- Defendant has since sold his medical practice to Tristar Wellness on Miami Beach. Although the new owners hold him in the highest regard and remain in contact with him, they now take the position of not giving access to medical records needed to defend this case, and are conferring with legal counsel;

- Defendant relinquished his medical license (executed 3/25/24, filed 4/3/24 SAO file 396-398, attached as **Exhibit D**).

- A Miami Herald Investigative Reporter has recently begun contacting some of these patients, and now, as a result of that contact, they advise they no longer will communicate with undersigned counsel;

- The significant passage of time has also taken a toll on the ability of Defendant and his counsel to locate and secure necessary documents to support his defense. For example, Kamlet recalls he renewed his DEA license under his home address, but due to the passage of time cannot recall nor locate the necessary documents, at this time. Counsel is still attempting to verify this information, but the red tape and bureaucracy involved is extremely time consuming. If he were able to do so, the licensing regulations provide that his home would then have been properly considered to be a medical satellite office where he would have been able to hold drugs and mediations there;

- The Defendant's ability to testify in his own defense has been severely compromised**.**

V.      **PHYSICAL AND EMOTIONAL IMPACT ON DEFENDANT**

In the **constitutional** speedy trial context, minimizing anxiety and concern of the accused is an important factor. See, *e.g.*, *United States v. Vargas*, 97 F.4th 1277, 1286 (11th Cir. 2024) ("From a defendant's perspective, the right to a speedy trial is designed [among other things] ' … to minimize anxiety and concern accompanying public accusation …'").

The Defendant's "anxiety and concern accompanying public accusation" has been extraordinary and debilitating. In 2004, the defendant suffered from two heart attacks and had surgical stents implanted. Since the date of the search at his residence (March 9, 2022) he again suffered from a cardiac incident that has been documented in Denver, Colorado, which counsel is in the process of trying to ascertain. Moreover, recently, as he was in an MRI at for an issue with his eyesight that has diminished, it was noted that some time recently, he suffered from an ischemic incident, in layman's terms, a mini stroke of sorts. In sum, the Defendant's physical as well as mental capacity has significantly changed since the search of his home, which is supported by the medication he has been taking under medical supervision.[10]

Additionally, counsel has observed a marked difference over the past two years in the Defendant's ability to concentrate with, and assist, counsel on a regular basis, due to his elevated levels of stress, advancing age[11], and other related factors. <u>Although there is no claim that Defendant is incompetent to stand trial, we note that Courts, including the Eleventh Circuit, have routinely recognized the value of defense counsel's observations in that regard, and we urge the</u>

---

[10] Due to privacy issues, this information will be furnished to the government upon request, under a Protective Order to be filed.

[11]    Defendant will be 70 years old in February. As the Cleveland Clinic recognizes, "As you age beyond 65 years, you may occasionally forget names and words and misplace things. With mild cognitive impairment, you frequently forget conversations and information that you would typically remember, like appointments and other planned events. MCI interferes with your daily, routine activities." Mild Cognitive Impairment (MCI): Symptoms & Treatment (clevelandclinic.org)

<u>Court to place similar weight on our assessment here.</u> See, *e.g.*, *Raheem v. GDCP Warden*, 995 F.3d 895, 930 (11th Cir. 2021)("The contemporaneous assessment of trial counsel is particularly probative because competency is 'primarily a function of defendant's role in assisting counsel in conducting the defense' and the defendant's counsel is thus 'in the best position to determine whether the defendant's competency is suspect.'"); *Watts v. Singletary*, 87 F.3d 1282, 1288 (11th Cir. 1996)(same)(citations omitted); *Fowler v. Davis*, 838 F. App'x 254, 258 (9th Cir. 2020)("Counsel is in the best position to judge his client's ability to understand the proceedings and participate in his defense.") *Clark v. Commonwealth*, 73 Va. App. 695, 708, 865 S.E.2d 421, 427 (2021)("A court should 'strongly consider' counsel's representations because counsel is in the best position to speak to a client's ability to understand proceedings and assist counsel at trial."); *State v. Meeks*, 2002 WI App 65, 251 Wis. 2d 361, 380-81, 643 N.W.2d 526, 535-36 ("in almost all cases where competency is at issue, defense counsel is in a uniquely advantageous position to advise the court whether the defendant understands the proceedings and is able to assist in the defense."). See also, Rodney J. Uphoff, *The Role of the Criminal Defense Lawyer in Representing the Mentally Impaired Defendant: Zealous Advocate or Officer of the Court*?, 1988 Wis. L. Rev. 65, 87 ("Defense counsel is in the best position to make informed, comparative judgments about a particular client's understanding of the proceedings against him. Counsel is also in the best position to assess that client's ability to make the decisions required of the client and to provide whatever assistance counsel deems necessary.")

This includes the important question - as here - whether there has been a **decline** in a defendant's cognitive function. See, *Fowler,* at n.1 (9th Cir. 2020)("Trial counsel participated in the earlier competency proceedings and was thus in the best position to assess whether Fowler's competency had since declined.")

8

In addition to forcefully demonstrating the "anxiety and concern" suffered by the Defendant, these matters are highly relevant to the "actual prejudice" to Defendant's ability to assist counsel in presenting "a complete defense" (see, *infra*)

## VI. MEMORANDUM OF LAW

The federal government became aware of Defendant's alleged possession of the controlled substances at the latest on March 22, 2023 (the date the DEA was notified), and an Assistant United States Attorney advised the following day (March 23, 2023) that his Office would "assist in the furtherance of this investigation", yet no investigation at all was conducted by any federal agency and federal charges were delayed for 16 months for absolutely no reason at all. As the Supreme Court has instructed, "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. at 652, 112 S. Ct. at 2691. The Eleventh Circuit has explained that **"[t]he rationale for presuming prejudice is, after all, that 'excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify**." *United States v. Ingram*, 446 F.3d 1332, 1339 (11th Cir. 2006) (emphasis added)

For that reason, **in the post-indictment context, "[d]elays exceeding one year are generally found to be 'presumptively prejudicial.'** *Id*., quoting *Doggett*, 505 U.S. at 652 n. 1. Further, "[i]n cases of government negligence, [the court's] concern for substantiating prejudice decreases as the period of delay increases." *United States v. Clark*, 83 F.3d 1350, 1353 (11th Cir. 1996)

For pre-indictment delay, however, "[t]o establish a violation of a defendant's Fifth Amendment rights, the defendant must satisfy a two-prong test, showing that the (1) pre-indictment delay caused him actual substantial prejudice; and (2) that 'the delay was a product of

9

deliberate design by the government to gain a tactical advantage.'" *United States v. Russaw*, No. 23-11598, 2023 U.S. App. LEXIS 22127, at *5 (11th Cir. Aug. 23, 2023)

We address "Actual Prejudice" and "Tactical Advantage" *seriatim*:

## VII. ACTUAL PREJUDICE

The factual allegations set forth, *supra,* are not the type of general or speculative claims which are routinely rejected[12], but rather, are specific examples of the disadvantage(s) which Defendant now faces in defending himself, due to the government's delay.

We urge the Court to evaluate these factors through the lens of the Supreme Court's wise and common-sense observations that "we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify,"[13] and "there is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown."[14]

The above statements by the Supreme Court are highly significant because courts in similar scenarios have held that a Defendant's burden is "relaxed" due to inherent difficulties in requiring a party to prove matters for which the other party may be at fault. For example, the Supreme Court's landmark case of *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982), "requires some showing that the evidence lost would be both material and favorable to the defense" before

---

[12] See, *e.g.*, *United States v. Russaw*, No. 23-11598, 2023 U.S. App. LEXIS 22127, at *5 (11th Cir. Aug. 23, 2023)("Speculative allegations are insufficient to demonstrate intentional government delay or actual prejudice"); *Parris v. Warden, Limestone Corr. Facility*, 542 F. App'x 850, 852 (11th Cir. 2013)("a defendant trying to prove prejudice from the loss of deceased witnesses' testimony must make more than a general allegation of loss of witnesses.")

[13] *Doggett v. United States*, 505 U.S. 647, 655 (1992).

[14] *Barker v. Wingo*, 407 U.S. 514, 532 (1972).

dismissal of the charges is appropriate for the government's deportation of witnesses. *Id*, at 872-73. However, **the Supreme Court noted that the inherent difficulties brought on by denial of the opportunity to interview the witnesses "… may well support a relaxation of the specificity required in showing materialit**y …" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982) (emphasis added) . See *also*, *United States v. Tungovia*, No. CR-17-01648-TUC-RM (LAB), 2018 U.S. Dist. LEXIS 83801, at 11 (D. Ariz. May 17, 2018) (noting *Valenzuela-Bernal* "suggest[ed] that a lesser showing of materiality was appropriate where the material witnesses were deported before defendant had an opportunity to interview them").

See also, *Malcolm v. Marathon Oil Co*., 642 F.2d 845, 864 (5th Cir. 1981)("relaxed standard" for assessing damages in antitrust cases "based on a recognition of the difficulty in reconstructing events that might have happened but for the defendant's unlawful conduct."); *Bell v. 3M Co*., 344 F. Supp. 3d 1207, 1229 (D. Colo. 2018)(noting "the relaxed standard courts apply in … cases" where "plaintiffs had some difficulty obtaining information in defendant's control …"); *Motors Ins. Corp. v. Williams*, 576 So. 2d 218, 221 (Ala. 1991)("Because of the difficulty of proving a negative, the initial burden of proving the motorist was uninsured is somewhat relaxed."); *Van Hoozer v. Farmers Ins. Exch*., 219 Kan. 595, 611, 549 P.2d 1354, 1367 (1976) (uninsured motorist insurance: "Mindful of the difficulty of proving a negative, many courts have relaxed the burden by adjusting the quantum of proof necessary.")

See also, *Doggett, supra*, at 657 ("neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him.")

VIII.    **"POSSIBILITY THAT THE ACCUSED'S DEFENSE WILL BE IMPAIRED"**

As set forth above, the government's delay in charging Defendant with the drug offenses has impaired his ability to "present a complete defense". "Whether rooted directly in the Due

11

Process Clause … or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 1731 (2006). See also, *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967)(an accused's "right to present his own witnesses to establish a defense [is] a fundamental element of due process of law.")

## IX. IMPEACHMENT

The government's delay has greatly prejudiced the Defendant's ability to testify in his own defense, perhaps the most fundamental right of a defendant in a criminal case.[15] As set forth in the search warrant affidavit, Defendant was "a registered doctor in the State of Florida, currently practicing … [and] also the co-owner of a pain medication/addiction rehabilitation clinic located in Miami Beach, Florida." Moreover, and of tremendous significance here, he was recognized as "the world expert on cardiac safety in ibogaine treatment.", one of the substances he is currently charged with possessing. See, *e.g.*, [Jeffrey Kamlet, M.D - Global Ibogaine Conference](#).

Due to the delay, Defendant is far more impeachable should he wish to testify now:

- On December 20, 2023, the DEA suspended Defendant's registration and as part of the settlement process in the State case, Defendant voluntarily relinquished his Medical License, at the prosecution's request;

---

[15] "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.' …The necessary ingredients of … due process of law include a right to be heard and to offer testimony … The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call 'witnesses in his favor' … Logically included in the accused's right to call witnesses whose testimony is 'material and favorable to his defense,'" is a right to testify himself, should he decide it is in his favor to do so. In fact, the most important witness for the defense in many criminal cases is the defendant himself ... Even more fundamental to a personal defense than the right of self-representation, which was found to be 'necessarily implied by the structure of the Amendment,' is an accused's right to present his own version of events in his own words. A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness." *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987).

- Defendant is now a convicted felon, which also negatively impacts his credibility;

- Recollection

- As mentioned above, during the period of delay, Defendant has suffered a cardiac incident requiring a hospital visit in Denver, Colorado, and a mini-stroke, among other health issues which - in conjunction with the passage of time - have dramatically impacted his ability to recall and convey details of events occurring several years ago. Because a full showing of the nature and extent of these health issues would reveal sensitive, confidential and HIPPA-protected information, Defendant will provide same in a sealed affidavit at the request of the Court.

Former Chief Judge, the Honorable Michael Moore of this District recently observed that:

> [Of] the three interests that the Sixth Amendment right to a speedy trial protects … (iii) **to limit the possibility that the defense will be impaired … is the most serious because the inability of a defendant adequately to prepare his case skews the fairness of the entire system**. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown. *United States v. Contreras*, 586 F. Supp. 3d 1272, 1285 (S.D. Fla. 2022) (emphasis added).

A fundamental truth is that "[a]s time goes by, records are destroyed, essential evidence may become tainted or disappear, memories of witnesses fade, and witnesses may die or be otherwise unavailable." *McCray v. State*, 699 So. 2d 1366, 1368 (Fla. 1997). In the civil context, where only money is at stake, the Eleventh Circuit has noted that "Evidentiary prejudice encompasses such things as lost, stale or degraded evidence or witnesses whose memories have faded or who have died." *Pinnacle Advert. & Mktg. Grp. v. Pinnacle Advert. & Mktg. Grp.*, LLC, 7 F.4th 989, 1010 (11th Cir. 2021)

## X.   TACTICAL ADVANTAGE

The Eleventh Circuit has expressly recognized that improper tactical advantage is not limited to cases where "the tactical advantage sought is the prejudice to the defendant **which the government anticipates will flow from the delay**." *Foxman*, *infra*. Rather, and crucial herein,

"bad faith in this sense or in the sense of a subjective sinister motive is not critical to a due process violation for preindictment delay":

> The critical element is that the government makes a judgment about how it can best proceed with litigation to gain an advantage over the defendant **and, as a result of that judgment, an indictment is delayed**. Then, the question becomes whether that delay caused the defendant actual substantial prejudice.
>
> The government, as litigating party, might pursue tactical advantages other than prejudice directly caused by delay. We think intentional government acts designed to obtain a tactical advantage which only incidentally cause delay have never been ruled out as a potential basis for due process violations. The main point is showing acts done intentionally in pursuit of a particular tactical advantage: **delay (and the prejudice directly caused by the delay) need not necessarily be the tactical advantage sought**. *United States v. Foxman*, 87 F.3d 1220, 1223 n.2 (11th Cir. 1996)(emphasis added).

Stated differently, to prove a prohibited "tactical advantage", Defendant need not show that the government sought delay *for the purpose of delay*, only that the government's "judgment about how it can best proceed with litigation to gain an advantage" **resulted** in a delayed indictment.

Herein, there can be no question that the government made such a judgment about how to "best proceed", which **resulted** in delay. Obviously, the government was waiting until the State case was closed before proceeding. The Defendant never would have entered into a plea agreement with the State, had he believed that a federal charge was looming, or still a possibility. To the contrary. One obvious tactical advantage to the Government here is that because of this plea to a third degree felony, the Defendant is not eligible for the extra point to be deducted when calculating the USSG, that was recently enacted.

Additionally, "tactical advantage" includes "delay for the purpose of **rendering unavailable** evidence favorable to the defense **or which would tend to undercut the government's case**." *United States v. Gulley*, 526 F.3d 809, 820 (5th Cir. 2008). The government

14

was certainly aware of the extreme challenges of prosecuting a renowned addiction/pain management Doctor who was the world's foremost expert on Ibogaine (one of the charged substances) for possession with intent to distribute addictive and pain management drugs. As a direct and proximate result of the delay, the "tactical advantage" "render[ed] unavailable evidence … which would tend to undercut the government's case", *i.e.*, Defendant is no longer a well-respected and prominent leader in his field, but rather, a convicted felon, subject to impeachment on that basis alone should he choose to testify. The extreme "tactical advantage" to the compellingly changed circumstances cannot be ignored.

It is also noteworthy that although the Eleventh Circuit has not yet adopted a "reckless disregard" standard, the Supreme Court in *Lovasco, supra* noted the government's concession that such conduct **would** constitute a due process violation:

> "A due process violation might also be made out upon a showing of prosecutorial delay incurred in reckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense."

*United States v. Lovasco*, 431 U.S. 783, 795 n.17, 97 S. Ct. 2044, 2051 (1977)(citing government's brief).

Finally, we note that numerous jurisdictions have recognized that the "tactical advantage" test also extends to "some other bad faith purpose". See, *e.g.*, *United States v. Crouch*, 84 F.3d 1497, 1511 (5th Cir. 1996)("A significant majority of our sister circuits appear to now follow the same rule, namely that … dismissal for preindictment delay requires a showing not only of substantial, actual prejudice, but also that the prosecutor intentionally delayed to gain tactical advantage **or to advance some other improper purpose**."); *United States v. Greer*, 956 F. Supp. 525, 527 (D. Vt. 1997)("To warrant dismissal based upon pre-indictment delay, defendants must satisfy two requirements: (1) that the delay caused them actual and substantial prejudice; and (2)

that the delay was for tactical advantage **or an otherwise improper or illegitimate prosecutorial purpose**."); *Lazarus v. Hill*, No. 5:18-cv-00718-VBF-MAA, 2020 U.S. Dist. LEXIS 253257, at *30-31 (C.D. Cal. Dec. 22, 2020)("most other circuits have held that, to prevail on a pre-indictment delay claim, a defendant must show, in addition to actual prejudice, intentional delay by the government to gain an unfair tactical advantage **or for another bad faith motive**.")(all emphasis added)

Accordingly, to whatever extent the foregoing considerations may not technically be assessed under the "tactical advantage" inquiry, they should still weigh in Defendant's favor as "some other improper purpose".

## MEET AND CONFER

Undersigned counsel has conferred with Assistant United States attorney Frank Tamen who objects to the relief sought in this motion.

## CONCLUSION

Based upon the unique combination of facts and circumstances set forth above, this is one of those rare cases where the Indictment should be dismissed for prejudicial pre-indictment delay.

Dated: February 13, 2025

| | |
|---|---|
| JAYNE C. WEINTRAUB, ESQ. | HERBERT COHEN, ESQ. |
| Sale & Weintraub, P.A. | 600 South Andrews Ave., Suite 407 |
| 2 South Biscayne Blvd. | Ft. Lauderdale, FL 33301 |
| One Biscayne Tower – 21st Floor | Telephone (954) 766-8820 |
| Miami, FL 33131 | E-mail: hcohen@herbcohenlaw.com |
| Telephone: (305) 374-1818 | |
| E-mail: jweintraub@saleweintraub.com | |
| | |
| By: *s/Jayne C. Weintraub* | By: *s/Herbert M. Cohen* |
| Jayne C. Weintraub, Esq. | Herbert M. Cohen, Esq. |
| Florida Bar No. 320382 | Florida Bar No. 258806 |