UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20286-CR-ALTONAGA

UNITED STATES OF AMERICA

v.

JEFFREY KAMLET,

       **Defendant.**
_____/

## GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS PHYSICAL EVIDENCE

### Introduction

Defendant Jeffrey Kamlet has filed a motion to suppress physical evidence seized pursuant to a search warrant issued by a state circuit judge in Miami-Dade County, and executed by an investigator with the State Attorney's Office, assisted by Miami Beach police.

The warrant authorized a search for evidence related to sex trafficking of minors, prostitution, firearms, and controlled substances. The warrants were based primarily on information provided by a 17-year-old girl, identified as "J.S.," with some corroboration obtained from photos and messages on her cellphone.

The affiant to the warrant, Investigator Francisco Casanovas, at the same time also obtained an arrest warrant for Kamlet for offenses relating to sex with a minor.

Casanovas arrived at the defendant's apartment accompanied by Miami Beach police, and placed Kamlet under arrest on the basis of the arrest warrant. Officers then began a search of the

apartment, soon finding two locked safes, which matched J.S.'s statements about where she had seen numerous pill bottles containing oxycodone, Xanax, Ketamine, and other drugs.

Kamlet was advised of his Miranda rights and asked for the combinations to the safes. He stated that he did not remember the combinations, and further volunteered that he had drugs from his office in his safe. Kamlet then was a doctor and the owner of a pain clinic (pgs. 6, 13-14 of second search warrant Affidavit.)

At that point, the search was halted while Investigator Casanovas obtained a second search warrant, specific to the two safes. Inside one of the safes were the drugs that Kamlet is now charged with possessing.

## Legal Memorandum

The United States will not repeat the very lengthy and detailed recitation of events described in the defendant's motion. The United States does not challenge the accuracy of most of those facts; it disagrees with the significance and import attributed to them by the defendant.

The defendant's arguments fall into the following general categories: Staleness of the probable cause, the unreliability of the witness J.S., whose statements were used to establish the probable cause, overbreadth of the items to be seized, and technical defects in the signing and issuance of the warrant.

The law governing disposition of this motion is set out in United States v. Leon, 468 U.S. 897, 918-921 (1984). Leon held that when officers conduct a search in a good-faith belief they are acting under authority of a valid search warrant, the evidence is not subject to suppression just because a different court finds that the warrant was defective.

Good faith: The affidavit and warrant at issue in this case are not examples of good draftsmanship. But the good faith of the officers cannot be doubted, based on this simple fact: The original warrant authorized them to search the premises of Kamlet's apartment. It described innumerable items to be seized, most of which were small enough to be stored in a safe, and the affidavit specifically mentioned that witness J.S. had described seeing drugs in a safe (pg. 9 of Affidavit).

These assertions would have easily supported the officers in breaking into the safes on the authority of that first warrant. But instead, they halted the search and waited while they applied for and were granted a second warrant, specifically authorizing a search of the safes. This deference to obtaining legal authorization clearly shows the officers fully respected the defendant's rights, even if the warrant itself was less than a model of good practice. Any mistakes made by the judge who signed the second warrant cannot be attributed to the officers.

Staleness: It is critical to note that it is primarily the second warrant, for the safes, that governs the validity of the search. The drugs for which the defendant is under indictment were found pursuant to that warrant.

The officers entered Kamlet's apartment not just pursuant to the first search warrant, but with an arrest warrant as well. They were thus legally present in his residence when he made the post-Miranda statement that he had drugs from his office in the safe (pgs. 13-14). That immediate new probable cause obviated any staleness argument that could be made in this case. The only evidentiary items at issue in this case are the drugs seized during the execution of that second warrant.

In the event the defendant argues that the alleged staleness of the first search warrant somehow infects the second warrant, the United States cites United States v. Carroll, 750 F.3d 700, 706 (7th Cir. 2012); United States v. Servier, 692 F. 3d 774 (7th Cir. 2012) and cases cited therein, for the principle that evidence of sex trafficking offenses is often kept on offenders' phones and devices for years, and therefor even an extended delay between the creation of such evidence and the execution of a search warrant for it is not subject to suppression based on a staleness argument.  This same information was specified in the search warrant affidavit (pg. 13).

In relation to this established law, the defendant asserts that the affidavit lacked sufficient probable cause to establish a likelihood that evidence of sexual exploitation of minors would be found on the various electronic devices in his apartment.  From this he argues that the longevity of such evidence does not save the affidavit from staleness.  However, the asserted facts in the affidavit are sufficient for the purpose of showing reason to believe there would likely be evidence of sexual exploitation of minor in the defendant's electronics:  The defendant met J.S. and her friend, another 17-year-old girl, on Tinder, a website known for sexual hook-ups.  J.S. told Casanovas that the defendant said he "would take care of her if they had chemistry."  He told her they could make a lot of money if he could get her into porn, and that he spoke to her about making her into a porn star (pgs. 10-11 of Affidavit).  In addition, photos from her phone showed her displaying $600 in cash, the money that Kamlet paid her for sex.  It is also clear that he knew the girls were minors.  When police first came to his apartment to retrieve the girls for their parents, he said they had shown him their IDs and confirmed that they were 18; in truth, they had no IDs on them (pg. 7 of Affidavit).

These facts are enough to show a reasonable likelihood that Kamlet may have been in contact through social media with other minor girls involved in prostitution.

As noted, the strength of the evidence relating to the defendant's possession of sex exploitation materials is not really germane to the search for drugs, which were directly described by the eyewitness J.S. and admitted to by the defendant.  It may be relevant to the overall allegations that the search warrant affidavit is rife with deficiencies.  But adequacy, not perfection, is the standard that should be applied.  The statements from J.S. that she saw various drugs in a safe in the defendant's apartment was corroborated by the officers finding such safes on their initial entry.  They were then further corroborated by the defendant's own admission that he had drugs from his office in the safe.  It was only after obtaining this additional evidence that the officers obtained the second search warrant, which is the one that led to their finding the drugs.

<u>Witness Credibility:</u>   The defendant devotes considerable argument to his position that the affidavit had material omissions relating to the credibility of the witness J.S., and that if it had fully explained her background, the judge would not have likely signed the warrant.  The details set out in the defendant's motion and its numerous attachments and exhibits were vastly more extensive than a search warrant affidavit requires.  The salient facts were sufficiently set forth in the affidavit for the judge to make a reasoned determination of the extent to which she would rely on the information provided by that witness:  It noted that J.S. was a prostitute (pgs. 9, 10), had lied to police about her identity and age when police retrieved her from the defendant's apartment as a runaway, states how J.S. used cocaine in the defendant's apartment (pg. 6), and noted that he gave her Xanax and several doses of Subutex to help her with her withdrawal from opioids (pg. 11).

In other words, the judge issuing the warrant was apprised that the witness had lied to police, used drugs repeatedly, and was an opioid addict. These facts are certainly sufficient to allow the judge to assess her credibility

Overbreadth:   The defendant argues that the affidavit is overbroad in its description of the items to be seized, by including drugs not described by J.S.  However, the affidavit identifies oxycodone, Xanax, ketamine, and cocaine as drugs observed by J.S. in the safe.  Any discrepancy between the drugs identified in the affidavit and those listed as the items to be seized is not of any consequence.  A search for any one of the identified drugs would have to be as thorough as a search for all of them.  The scope of the search could not possibly be affected by this oversight; accordingly, it is not a legal defect subjecting the warrant to challenge.

Technical deficiencies:    Lastly, the technical deficiencies in the warrant are regrettable but not so material as to render the search invalid under <u>Leon</u>.  The second warrant should have stated the address where the safes were located.  However it identified them by brand and by photographs, which showed that the safes were present where the police were located, and provided the means by which to identify the specific places to be searched.  The "particularity" requirement of the 4th Amendment is designed to ensure that law enforcement searches are conducted only at the premises identified for probable cause, and not by accident or even design anyplace else.

Given the fact of these safes being in police presence at the time, there was no danger that they would search the wrong ones.  Obviously a more complete description would have been better.  However, the fact that this second warrant was sought while the officers were already present in the defendant's apartment and trying to complete their search, the shortcoming

6

occasioned by haste is understandable. The allegations about the warrant not bearing the court seal should be considered in light of the fact that many search warrants are taken electronically and a physical seal is not applicable.

## Conclusion

There are numerous shortcomings in the search warrants that are justifiably criticized by the defendant. But <u>Leon</u> explained that search warrants are drafted by police officers in the midst of criminal investigations, and cannot be held to the same standards of completeness as are expected of pleadings and orders by lawyers and judges. The search warrants in this case were adequately drafted to allow the investigators in good faith to rely on the judge's knowledge and experience in executing them, and the motion to suppress should be denied.

Respectfully submitted,

HAYDEN PATRICK O'BYRNE
UNITED STATES ATTORNEY

By:  s/ Frank H. Tamen
FRANK H. TAMEN
Assistant United States Attorney
Florida Bar No. 0261289
99 NE 4th Street, Ste. 700
Miami, Florida 33132
Tel: (305) 961-9022
Frank.Tamen@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed on the 13th day of February, 2025 with the Clerk of the Court using CM/ECF.

/s/ Frank H. Tamen
Frank H. Tamen

Assistant United States Attorney